**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES THOMAS TURNER,** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:16-0269** |
| | : | |
| **v** | : | **(JUDGE MANNION)** |
| **J. TUTTLE,** *et al.,* | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM**

I.   **Background**

Plaintiff, James Thomas Tuner, an inmate confined in the United States Penitentiary, Lewisburg, ("USP-Lewisburg"), Pennsylvania, filed the above captioned Bivens[1] action pursuant to 28 U.S.C. §1331. (See Doc. 1, complaint). The named Defendants are the following Correctional Officers employed at SCI-Canaan, Plaintiff's prior place of confinement: J. Tuttle, D. Clark and four Jane and John Doe Defendants. Id. However, J. Tuttle is the only individual who could be identified with certainty, and for whom service was accepted. (See Doc. 17). Because the waiver of service of summons for the remaining Defendants could not be executed, as the Defendants could not be identified as named by the Plaintiff, these Defendants will be dismissed

_____

[1]Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971).

pursuant to Rule 4(m), for Plaintiff's failure to properly identify these Defendants and effectuate service within 120 days of the filing of the complaint. See FED.R.CIV.P. 4(m).

Plaintiff alleges that on June 24, 2015, at approximately 12:00 pm, while being processed into USP-Canaan, Defendant Tuttle entered the exam room and "lean[ed] on the high exam bed looking at [Plaintiff] while Jane Doe was asking [him] a lots of questions about [his] seizures" and states to Plaintiff "I think you are lying", so "I'm going to take you off this medication". (Doc. 1, complaint). Plaintiff claims that when he responded "isn't that the doctor's job to take me off my meds", J. Tuttle stated "close your suck hole". Id. Plaintiff states that he "found that remark to be very disrespectfully, so [he] responded man what's your problem, what's wrong with you." Id. Plaintiff claims that Defendant Tuttle approached him while he was sitting in the chair, and "walked all the way up on [him] with his private parts in [his] face, trying to provoke [him]." Id. When Plaintiff asked Defendant Tuttle to "please move, you're in my space" and "he refused to move", Plaintiff "stood up and moved in front of the examination room door so the officers can see [him]." Id. Plaintiff states that "when Officer D. Clark and CO John Doe-4 saw that there was a problem in the exam room they entered the room, asking what's the problem". Id. Plaintiff told Defendant Clark that "this nurse is disrespecting me

2

and C.O. Clark look at LPN J. Tuttle and J. Tuttle was denying it." Id. So, Defendant Clark "ask[ed] [Plaintiff] to turn around and summit (sic) to hand cuff" and Plaintiff did as he was told. Id. Plaintiff claims that once the cuffs were on him "J. Tuttle hit [him] from the back in the back of [his] head, then C.O. Clark said take him down so Jane Doe-3, John Doe-4 and C.O. D. Clark slam [him] down on top of a small trash can, causing the corner of the trash can to cut deep into [Plaintiff's] upper right chest and shoulder leaving three stab wounds." Plaintiff contends that "after hitting or landing on the trash can they pull [him] out of the exam room on the floor faced down on [his] chest, the whole time the restraints were on [him]." Id. Once he was pulled out of the exam room into the hallway, Plaintiff claims "C.O. Clark lean[ed] down to [his] ear and stated while beating [his] face around [his] left eye, 'you been talking shit all day' and then beat [him] some more." Id.

Plaintiff was then taken to medical, where "an older male nurse examined and treated [him] for [his] injury, [his] left eye was very swollen, [his] upper chest was cut deep in three places, the bone in [his] left knee is out of place from the CO stepping on the leg restraints, causing [Plaintiff] to fall, landing on [his] knees." Id. The nurse who examined Plaintiff "took pictures of [his] shoulder and [his] face, [his] whole body was hurting so bad but he took pictures of the scars he could see and all or most of this was caught on

3

videotape." Id.

On February 16, 2016, Plaintiff filed the instant action in which he alleges that the named Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. Id. For relief, Plaintiff seeks compensatory and punitive damages. Id.

Presently before the Court is Defendant Tuttle's motion to dismiss and/or for summary judgment. (Doc. 18). The motion has been fully briefed and is ripe for disposition. For the reasons that follow, Defendant's motion for summary judgment will be granted.

## II.   Standards of Review

### A. Bivens Standard

Plaintiff's claims are filed pursuant to 28 U.S.C. §1331, in accordance with Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, (1971). Under Bivens, the District Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor. Bivens, supra. Pursuant to Bivens, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary

4

damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978). A Bivens-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. §1983 and the same legal principles have been held to apply. See, Paton v. LaPrade, 524 F.2d 862, 871 (3d Cir. 1975); Veteto v. Miller, 829 F.Supp. 1486, 1492 (M.D.Pa. 1992); Young v. Keohane, 809 F.Supp. 1185, 1200 n. 16 (M.D.Pa. 1992). In order to state an actionable Bivens claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law. See West v. Atkins, 487 U.S. 42, 48 (1988); Young v. Keohane, 809 F.Supp. 1185, 1199 (M.D.Pa. 1992).

## B. **Motion to Dismiss**

Defendant's pending dispositive motion is supported by evidentiary materials outside the pleadings. Federal Rule of Civil Procedure 12(d) provides in part as follows:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given reasonable opportunity to present all the material that is pertinent to the motion.

Fed.R.Civ.P. 12(b)(d).

This Court will not exclude the evidentiary materials accompanying the Defendant's motion. Thus, the motion will be treated as solely seeking

summary judgment. See Latham v. United States, 306 Fed. Appx. 716, 718 (3d Cir. 2009) (when a motion to dismiss has been framed alternatively as a motion for summary judgment such as in the present case, the alternative filing "is sufficient to place the parties on notice that summary judgment might be entered.")

### C. Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a) "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, parties may not rely on unsubstantiated allegations. Parties seeking to establish that a fact is or is not genuinely disputed must support such an assertion by "citing to particular parts of materials in the record," by showing that an adverse party's factual assertion lacks support from cited materials, or demonstrating that a factual assertion is unsupportable by admissible evidence. Fed.R.Civ.P. 56(c)(1); see Celotex, 477 U.S. at 324 (requiring evidentiary support for factual assertions made in response to summary judgment). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). Parties must produce evidence to show the existence of every

element essential to its case that they bear the burden of proving at trial, for

"a complete failure of proof concerning an essential element of the nonmoving

party's case necessarily renders all other facts immaterial." Celotex, 477 U .S.

at 323; see Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992). Failure

to properly support or contest an assertion of fact may result in the fact being

considered undisputed for the purpose of the motion, although a court may

also give parties an opportunity to properly provide support or opposition.

Fed.R.Civ.P. 56(e).

## III.   **Statement of Facts**[2]

On June 24, 2016, at 3:30 pm, Turner received Incident Report No.

2730186,     charging     Plaintiff     with     Assaulting     any     person     (Minor

---

[2]Middle District of Pennsylvania Local Rules of Court provide that in
addition to filing a brief in response to the moving party's brief in support,
"[t]he papers opposing a motion for summary judgment shall included a
separate, short and concise statement of material facts responding to the
numbered paragraphs set forth in the statement [of material facts filed by the
moving party] ..., as to which it is contended that there exists a genuine issue
to be tried." See M.D. Pa. LR 56. 1. The rule further states that the statement
of material facts required to be served by the moving party will be deemed to
be admitted unless controverted by the statement required to be served by
the opposing party. See id. Because Plaintiff has failed to file a separate
statement of material facts controverting the statement filed by Defendant, all
material facts set forth in Defendant's statement (Doc. 24) will be deemed
admitted.

8

Assault)(Attempt), a 224(A) code violation. (Doc. 23-1 at 16, Incident Report).

The Incident Report reads as follows:

> On June 24, 2015, at approximately 12:00 PM, inmate Turner, James Thomas Reg #24839-076 was becoming belligerent and boisterous with medical staff during the intake process. I entered the screening room and attempted to de-escalate the situation. At that time inmate Turner directed his belligerence at me. Inmate Turner then stood up from the chair and swung at my face with his right hand in a closed fist. Inmate Turner attempted to strike and missed my face. I then secured inmate Turner's right arm and placed him on the ground to gain further control.

Id. Other officers arrived to assist in gaining control of Turner.  (Doc. 23-1 at at 21, 29-35, Officers' statements). Turner was handcuffed and ultimately taken to the Special Housing Unit (SHU). Id. 7. None of the staff members, including Tuttle, were injured during this incident. Id.

At approximately 12:30 pm, Turner was examined by medical staff. (Doc. 23-1 at 37-38, medical assessment). Turner had two minor abrasions on his right chest; one appeared to be older and healing while the other was newer. Id. Both abrasions were cleaned and band-aids were applied. Id. Photographs were taken of Turner's chest and back reflecting no injuries other than the two minor abrasions on his chest. (Doc. 23-1 at 39-40, photos). No further injuries were observed by the medical staff.  (Doc. 23-1 at 37-38, medical assessment).

9

On July 9, 2015, Tuner appeared for a hearing before the Discipline Hearing Officer (DHO), where he was found guilty of the prohibited act of Assaulting Any Person (Attempted). (Doc. 23-1 at 26, Discipline Hearing Officer Report). In addition to the Incident Report and Investigation, the DHO relied on Memoranda, dated June 24, 2015, from six Correctional Officers, a July 9, 2015 Memorandum from a Special Investigative Agent, Defendant Tuttle's Injury Assessment and Followup (Medical); the Bureau of Prisons Health Service Clinical Encounter for Plaintiff; and two photographs depicting Plaintiff. (Doc. 23-1 at 27). The DHO found the specific evidence to reveal the following:

> The DHO relied upon a memorandum dated June 24, 2015 from E. Barrett, Correctional Systems Officer, which reflects in pertinent part on the date of the incident while working R&D Officer #1 screening inmates into medical, he observed TURNER becoming verbally aggressive towards medical staff in the exam room #2, TURNER jumped up from the exam chair and attempted to assault the reporting staff member with a closed fist; as well as a memorandum dated June 24, 2015 from R. Buchinski, Correctional Systems Officer, also indicating in relevant part on the date of the incident TURNER was in R&D being screened by medical staff, he began to raise his voce and became verbally combative, he then walked to the exam room where TURNER was being screened, he then stood from the exam chair and moved his arm in a motion to strike the reporting staff member with a closed fist.
>
> The DHO considered and affords little weight to TURNER's plea "Pull the film. The man is lying.", and when further interrogatories

were posed by the DHO he denied swinging at the reporting staff member with a closed fist. The DHO finds his plea fails to exculpate him of the charge.

TURNER disputes swinging at the reporting staff member with a closed fist. In this DHO will afford greater weight to the reporting staff member, whose description of the incident is also corroborated by the aforementioned staff witnesses, as they derive no known benefit by providing false information and have a legal obligation to present accurate factual information. Media of the incident is non-existent. As such, a finding will be made on available facts and evidence presented.

The quantum of evidence presented in this case well substantiates TURNER swung at the reporting staff member with a closed fist. Accordingly, the hearing officer will sustain the charge.

The DHO considered all evidence and has drawn the conclusion based on the greater weight of the evidence the prohibited act of Assaulting any Person (Attempted) (Code 224A) was committed.

(Doc. 23-1 at 28-29). The DHO imposed the following sanctions: loss of 27 days good conduct time (GCT), 60 days Disciplinary Segregation (DS), impound property for two (2) months, excluding religious and legal material, 60 day loss of mattress, and five (5) year loss of commissary, recreation, telephone, TRULINCS and visiting privileges. Id. The DHO advised Turner of his right to appeal the DHO's findings, within twenty (20) days under the Administrative Remedy Procedure. Id. The charges and sanctions imposed in connection with Incident Report No. 2730186 remain valid on Plaintff's

11

disciplinary record. (See Doc. 23-1 at 47, Inmate Discipline Data Chronological Disciplinary Record).

The record reveals, (See Doc. 23-1 at 11-15, Administrative Remedy Generalized Retrieval), and Plaintiff concedes, that no appeal from his misconduct hearing was filed. (Doc. 1 at 2).

## IV.  Discussion

### A.  Exhaustion

Defendants contend that Turner's complaint should be dismissed for his failure to exhaust available administrative. In pertinent part, the Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a).

Under the Prison Litigation Reform Act ("PLRA"), exhaustion of administrative remedies is required for all actions concerning prison conditions brought under federal law.  See 42 U.S.C. §1997e(a); Woodford v. Ngo, 548 U.S. 81 (2006). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or

particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." Nyhuis v. Reno, 204 F.3d 65, 71 (3d Cir. 2000). The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. Woodford, 548 at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004).

A prisoner does not have to allege in his complaint that he has exhausted administrative remedies. Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002). Failure to exhaust available administrative remedies is an affirmative defense. Id. As such, it must be pleaded and proven by the Defendants. Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002). Defendants have properly raised the matter of exhaustion of administrative remedies made available to inmates confined within the Bureau of Prisons ("BOP").

13

"The Bureau of Prisons has established an Administrative Remedy Procedure through which an inmate may seek formal review of a complaint which relates to any aspect of his imprisonment if less formal procedures have not resolved the matter. This procedure applies to all inmates confined in Bureau of Prisons institutions. . . ." 28 C.F.R. §542.10. Inmates are to informally present their complaints to the staff and the staff is to attempt to resolve the matter. 28 C.F.R. §542.13(a). If informal resolution is unsuccessful, the inmate is then to execute the appropriate form to bring the matter to the attention of the warden. 28 C.F.R. §542.14(b). The warden is then to respond to the inmate's complaint within twenty (20) days. Id. at §542.18. If an inmate is dissatisfied with the warden's response, he may then appeal to the Regional Director. Id. at §542.15. If the response of the Regional Director is not satisfactory, the inmate may then appeal to the Central Office of the Federal Bureau of Prisons, which office is the final administrative appeal in the Bureau of Prisons. Id.

The record reveals that, although Plaintiff was counseled as to filing an appeal through the administrative remedy with respect to the DHO's finding, (see Doc. 23-1 at 29), there is no evidence that Plaintiff appealed the Code 224A violation, or filed an administrative remedy regarding his claim of

14

excessive force. To the extent that Plaintiff argues that he "attempted to exhaust administrative remedies on the first Defendant, J. Tuttle", by filing "at level one a BP-8, gave it to the counsel, he return it with a level two BP-9 that go to the Warden, he return it with level three BP-10" and "at this level we have to mail it out to the Regional Director" and "[he] did so from USP-Canaan and [he] never see it again, or did get a response from the director", (see Doc. 1-1 at 5) there is no record of a grievance filed by Plaintiff at the institution level, concerning excessive force. (See Doc. 23-1 at 11-15, Administrative Remedy Generalized Retrieval).

Plaintiff also attaches as exhibits to his complaint, a series of administrative remedies he filed and responses he received. (See Doc. 1-1 at 1-13). The Court notes, however, that Plaintiff's submissions are all dated subsequent to the June 24, 2015 incident date, with the earliest being filed on July 24, 2015, and allege only that Defendant Tuttle made harassing comments to Plaintiff while issuing Plaintiff's medication in the Special Housing Unit.

Moreover, nothing in Plaintiff's exhibits or Plaintiff's Administrative Remedy Generalized Retrieval, establishes that he pursued any administrative remedy to the Regional Director, nor the Central Office. Thus,

it is evident that Plaintiff failed to follow the procedural requirements of the BOP. Failure to employ the system of administrative remedies, even if the administrative process would be inadequate to grant full relief, procedurally defaults any federal claim. See Spruill v. Gillis, 372 F.3d 218, 222-26 (3d Cir. 2004). Turner's failure to pursue the appropriate administrative process with respect to his claims precludes the litigation of such claims.

In Spruill, supra, our Court of Appeals held that congressional policy objectives were best served by interpreting the statutory "exhaustion requirement to include a procedural default component." The court further ruled that procedural default under §1997e(a) is governed by the applicable prison grievance system, provided that the "prison grievance system's procedural requirements [are] not imposed in a way that offends the Federal Constitution or the federal policy embodied in §1997e(a)." Id. at 231, 232.

In this case, the record clearly discloses that Turner failed to exhaust his administrative remedies with respect to his excessive force claim, or the appeal of his Code 224A violation. Thus, Turner has sustained a procedural default with respect to these claims.

Spruill cited with approval the Seventh Circuit decision in Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). Spruill, 372 F.3d at 231.

In Pozo, the Seventh Circuit ruled that "to exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Pozo, 286 F.3d at 1025 (emphasis added). Turner offers no evidence to justify his failure comply with BOP requirements. Consequently, he is now foreclosed from litigating his remaining claims in this Court.

In Spruill, the Third Circuit found that a procedural default component to the exhaustion requirement served the following congressional objectives: "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." 372 F.3d at 230. In Pusey v. Belanger, No. Civ. 02-351, 2004 WL 2075472 at *2-3 (D. Del. Sept. 14, 2004), the court applied Spruill to dismiss an inmate's action for failure to timely pursue an administrative remedy over the inmate's objection that he did not believe the administrative remedy program operating in Delaware covered his grievance. In Berry v. Kerik, 366 F.3d 85, 86-88 (2d Cir. 2004), the court affirmed the dismissal of an inmate's action with prejudice where the inmate had failed to offer appropriate

17

justification for the failure to timely pursue administrative grievances. In Ross v. County of Bernalillo, 365 F.3d 1181, 1186 (10th Cir. 2004), the court embraced the holding in Pozo, stating that "[a] prison procedure that is procedurally barred and thus is unavailable to a prisoner is not thereby considered exhausted." These precedents support this Court's decision to enter judgment in favor of Defendant Tuttle.

## B.  Claims Based on Disciplinary Proceedings

The sanctions levied against Turner during his disciplinary hearing, were all imposed as a result of prison misconduct. The Court finds that any Fifth Amendment due process claim regarding his disciplinary rehearing is barred under Heck v. Humphrey, 512 U.S. 477 (1994) and Edwards v. Balisok, 520 U.S. 641 (1997).[3] Under some circumstances, a prisoner may bring a Bivens claim for monetary damages based on the denial of due process during a prison disciplinary hearing. See Wolff v. McDonnell, 418 U.S. 539, 554 (1974) (stating that plaintiff's §1983 "damages claim was ... properly before the District Court and required determination of the validity of the procedures

---

[3]While Heck, and Balisok all involved §1983 cases, courts have extended their holdings to Bivens actions.  See Lora-Pena v. F.B.I., 529 F.3d 503, 506 n. 2 (3d Cir. 2008) ("Although Heck involved a §1983 action by a state prisoner, the reasoning in Heck has been applied to bar Bivens claims" (citing Williams v. Hill, 74 F.3d 1339, 1341 (D.C. Cir.1996) (per curiam)).

employed for imposing sanctions, including loss of good time, for flagrant or

serious misconduct"). However, such due process claims cannot be brought

in a Bivens action where the claims "necessarily imply the invalidity of the

punishment imposed" unless the plaintiff shows that the sanctions have been

overturned. See Balisok[4], 520 U.S. at 648 (finding claims for declaratory and

monetary relief based on allegations that plaintiff was denied opportunity to

present a defense and that hearing officer was biased could not be brought

pursuant to §1983); Heck, 512 U .S. at 486-87 ("We hold that, in order to

recover damages for allegedly unconstitutional conviction or imprisonment,

or for other harm caused by actions whose unlawfulness would render a

conviction or sentence invalid, a §1983 plaintiff must prove that the conviction

or sentence has been reversed on direct appeal, expunged by executive

order, declared invalid by a state tribunal authorized to make such

---

[4]In Edwards v. Balisok, the Supreme Court applied the lessons of Heck
to a state prisoner action, seeking compensatory and punitive damages,
challenging the constitutionality of procedures used in a prison disciplinary
proceeding that resulted in the loss of good-time credits, but not necessarily
challenging the result and not seeking the restoration of the good-time credits.
Again, the Court emphasized that such a claim is not cognizable under §1983
if a favorable outcome would necessarily imply the invalidity of the challenged
judgment, there the disciplinary finding and punishment. 520 U.S. at 646-8.

determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. §2254."). As the record before us demonstrates, the charges and sanctions stemming from June 24, 2015 remain valid on Plaintiff's disciplinary record.

## V.   Conclusion

Based upon the undisputed facts of record, Defendant Tuttle is entitled to summary judgment with respect to Plaintiff's claim of excessive force and his challenge to his misconduct rehearing. Moreover, the remaining Defendants, D. Clark and the four Jane and John Doe Defendants will be dismissed pursuant to Rule 4(m) for Plaintiff's failure to properly identify these Defendants and effectuate service within 120 days of the filing of the complaint. See FED.R.CIV.P. 4(m). An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: March 20, 2017**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-0269-01.wpd